# Whitton and Hulbert *et al. v.* James H. Smith *et al.*

A sale or assignment by one partner of all his interest in the partnership property, operates, *ipso facto,* a dissolution of the partnership; and this, too, although it may be stipulated in the articles of partnership that it should continue for a specified term of years.

The partner has the right to sell the whole partnership property, if the sale be free from fraud on the part of the purchaser; and such a sale terminates the partnership relation.

Where one of two partners in merchandise sold out the entire stock and invested the proceeds in land—held, that this dissolved the partnership and created a *joint tenancy* between the former partners in the lands so purchased.

Where a deed has been once duly executed and delivered, a subsequent surrender and destruction of it cannot divest the estate of the grantee, which passed by that deed.

Where A and B held lands in *joint tenancy*, and A surrendered the deed to the original grantor, and suffered the original grantor to convey the same land in trust to a third party, for the use of A and B and certain of their creditors—held, that the whole transaction was void.

The bill states that on the 1st day of August, in the year 1835, Whitton and Hulbert entered into a co-partnership in the business of merchandise, to continue six years. Whitton agreed to furnish goods or money to an amount not less than two thousand dollars nor more than four thousand dollars. Whitton was also to buy goods, and to be allowed five per cent. on the amount. Hulbert was to take charge of the business, and, for the first year, was to receive the sum of three hundred dollars, and for every succeeding year he was to receive the sum of not less than three hundred dollars nor more than eight hundred dollars, as should be agreed upon. The funds furnished by Whitton were to remain his property. At the end of the partnership, the parties were to divide the profits and share the losses between them, and neither party to sell or assign his share or interest in the concern without the consent of the other. Whitton advanced, in pursuance of this

agreement, about eight thousand dollars, and a mercantile house was established at Columbus, and continued until the fall of 1837. A large amount of goods, amounting to about fifty-one thousand dollars, was bought, which Whitton has paid for. In the fall of 1837, Hulbert became sick and unable to attend to business, and sold the entire stock of goods and store house in Columbus to James H. Smith, for the sum of thirty-one thousand eight hundred and fifteen dollars, that being the estimated price of the goods, and which Smith was to pay for in lands, at four dollars per acre, to be selected by Whitton and Hulbert out of ten thousand acres of land, then owned by Smith, in the late Choctaw nation; and Smith, to secure the performance of the contract on his part, executed a bond, binding himself to convey to them, by deed, the lands they might select. The store house was valued at five thousand dollars—the remainder of the sum which Smith agreed to pay—and for it Smith was to give two hundred and forty acres of land, and discharge all outstanding liabilities on said store house against Whitton and Hulbert. In the spring of 1838, Smith conveyed two hundred and forty acres of land to Whitton, and adjusted the balance of the five thousand dollars. Hulbert, after the making of said contract, continued sick and unable to attend to any business, and, from excessive use of spirits, was attacked with *mania a potu*. In the month of September, 1837, one Butterworth returned from New York, and brought with him, for collection, notes made by Whitton and Hulbert to Brewster, Solomons & Co. for thirty-three hundred and three dollars and eighty-eight cents; three notes to Doremus, Suydam and Nixon, amounting to one thousand and sixty-eight dollars and forty-three cents; and one note to Swords & Co. for eight hundred and fifty dollars and six cents. Butterworth applied to Hulbert for an adjustment, and it was finally agreed that he should execute a deed of trust upon the land bought of Smith, as soon as the same should be selected and a conveyance procured. Hulbert was then intoxicated and unfit to do business, and had never examined or selected the land. About this time Butterworth induced Hulbert to agree that Smith should convey all the lands, for which he had bought the goods, directly to Butterworth; and Butterworth promised to execute a deed declaring a trust in favor of

Whitton and Hulbert, and to secure the payment of the debts before mentioned, representing that such a state of things would not prejudice the rights of Whitton, and that it would be just the same as if Smith was to convey to Whitton and Hulbert.

Hulbert trusting to these representations, permitted Smith to make a deed to Butterworth on the 16th of October, 1837. Whitton was at this time in Massachusetts, and had no knowledge of such a conveyance. By the partnership articles the right to the land and benefits accruing vested in Whitton. Smith and Butterworth knew or ought to have known of Whitton's rights, and Whitton was ignorant of the mental situation of Hulbert, and the contract aforesaid was made without consulting Whitton. The bill charges that the deed is void, and was obtained by fraud from Hulbert, who had no power to make such an arrangement. That the rights of Whitton have been greatly prejudiced, as Butterworth never examined the lands, and the lands conveyed were of less value than others, which might have been selected. That Smith, when he made the conveyance aforesaid, obtained his title bonds from Hulbert, and that Smith refuses to permit Whitton and Hulbert to examine said 10,000 acres, and to make a selection. That at the time the conveyance aforesaid was made, Hulbert was deranged and incapable of assenting to such an arrangement. That upon the 17th day of October, 1837, Butterworth executed a deed declaring a trust in favor of Whitton and Hulbert, and to secure the payment of the debts mentioned in said deed; that said declaration was made without the knowledge or consent of Whitton. That the deed of trust made by Butterworth, was made in fraud of Whitton's rights, and is void; but that Butterworth unless restrained will proceed to sell under the deed. That about the 15th of December, 1837, Whitton arrived at Columbus; that he found Hulbert deranged as aforesaid; had him taken care of, and partly restored to health, so much so as to render him capable of executing a power of attorney, to execute and deliver in his name any deed of conveyance for any lands which might have been or was owned by Whitton and Hulbert, for the purpose of paying the debts which Whitton and Hulbert owed. That Whitton in his own and Hulbert's name, executed a deed of trust to Adolphus G.

Weir, as trustee to secure certain debts mentioned in the deed. That in making this deed, they classed and preferred their creditors, as they had a right to do, &c. The bill prays for a cancellation of the deed from Smith to Butterworth, and of Butterworth's declaration of trust, &c., and for general relief, &c. For an injunction to restrain Butterworth from selling, &c., &c.

The answers admit that Whitton and Hulbert engaged in partnership in Columbus, but know nothing of the terms. Smith says that sometime in July or August, 1837, he purchased a stock of goods of Whitton and Hulbert in Columbus, to the amount of $31,815,35; in payment of which he agreed to convey to them lands at $4 per acre, which lands they were to select out of 10,000 acres belonging to Smith in the Choctaw nation. This purchase was made under a written agreement drawn up by Argyle Campbell, attorney of Whitton and Hulbert. A further condition in said agreement was, that Whitton and Hulbert were to convey to Smith their store-house and lot in Columbus, for which Smith was to convey to them 240 acres of land, and release them from all outstanding liabilities on account of the purchase by them of said lot. That he received the goods of Hulbert, and called upon him to select the lands, giving him a descriptive list of the lands; and Hulbert, as defendant is informed, by the advice of Sylvester Pearl, did select the lands he desired to be conveyed to him. That sometime previous to this selection, Hulbert and Butterworth called upon him with the written agreement, and requested Smith to consent to an alteration of it, so as to bind him to convey the land to Butterworth, which alteration was made by consent of parties. Subsequent to that time, on the 16th of October, 1837, Smith did convey to Butterworth the lands which he agreed to give in payment of the purchase of the said goods. That after his deed to Butterworth, he called on Hulbert to make him a deed to the store-house, but Hulbert said he could make no deed, having no title to the lot. That when the deed to Butterworth was made the written agreement aforesaid was cancelled with the consent of Hulbert, who by the advice of his attorney, executed a receipt for the purchase money for the goods in the name of Whitton and Hulbert. That during all this time Hulbert was perfectly sound in mind,

and at no time while doing the business under the influence of liquor; nor was any fraud practiced upon Hulbert. Smith was told by Hulbert that Whitton knew and approved of the sale of the goods, and Whitton since then has told Smith that he approved of it and that the agreement had been satisfactorily complied with on Smith's part. That it is untrue that he ever conveyed to Whitton 240 acres in payment of the store-house, but that part of the trade was cancelled when the agreement was surrendered and destroyed; but Smith left a deed to be delivered to Whitton by A. Campbell, upon Whitton's compliance with the conditions mentioned, which not having been complied with, the deed has never been delivered and is null and void.

Butterworth states that some time in August or September, 1837, he received some notes, made by Whitton & Hulbert, for collection as an attorney at law. After the receipt of the notes, he applied to Hulbert for payment. Hulbert stated that he had sold or was about to sell a stock of goods belonging to Whitton & Hulbert to Smith for lands, which lands, when obtained, he intended to apply to the payment of certain debts which the firm owed; that he would furnish a list of the creditors he wished to secure, and requested Butterworth to write to the creditors named to extend the time of payment on receiving security for the ultimate payment of their debts. Butterworth wrote to them, and obtained the requisite power to make the arrangement, and then went to Hulbert for a compliance with the former proposition, which Hulbert agreed to do as soon as he should select the lands aforesaid. Butterworth then informed Hulbert that he had no power to make a deed of the lands to bind his partner, and that to effect the objects had in view, Smith should convey to Butterworth, who would make a declaration of trust in manner as was done; to all of which Hulbert, after consulting counsel, assented. Immediately after, Hulbert presented to Butterworth a descriptive list of the ten thousand acres, and requested him to assist in selecting eight thousand acres, and to procure Pearl's assistance for the same purpose; and after consultation with Pearl, Hulbert selected the land. Afterwards, on the sixteenth October, 1837, Hulbert and his legal adviser and Smith came to Butterworth's

office to have the proper conveyances executed, Butterworth then having in his possession the notes attempted to be secured by the deed of trust, or a request to have them secured and a promise soon to deposit them.    And then Smith, with Hulbert's consent, who acted under Campbell's advice, executed the deed to Butterworth of which exhibit B. in the bill is a true copy, and immediately thereafter Butterworth executed the declaration of trust, as agreed upon.    Butterworth states that Hulbert was competent to do business when he sold the goods to Smith, and when the deeds aforesaid were made.    Nor was Hulbert at any time during the time he was transacting business, under the influence of liquor, and would never take any step until he consulted with Murdock, his friend, and advised with his lawyer.    The answer denies all fraud, and states that Butterworth has no interest whatever in the matter.    Whitton & Hulbert are insolvent; and the creditors secured by the deed of trust made by Butterworth state, that he acted under their authority and with their approbation, and that none of the debts thereby secured have been .paid.

Such are the facts as stated in the pleadings.    An injunction was granted by J. R. Nicholson, one of the judges of the circuit court, and at the December term, 1840, the defendants moved to dissolve the injunction on bill and answers.


WILLIAM YERGER for the motion.

The rule is now well settled, that one partner, during the existence of the co-partnership, may make a valid assignment without the consent of the other co-partners, in the name of the firm, of all or any partnership effects.  3 Paige Ch. R. 517; 5 Cranch, 300; 4 McCord L. R. 519; 3 Kent Com. 44 *et seq.*

It is also well settled, that real estate purchased with partnership property, for the use of the partnership, is to be treated as personal property, both between the partners themselves, and creditors of the partnership.  2 Dow's Part. Cas. 242; 1 Swanst. 518, 521; 2 Dess. 472 *et seq.*; 1 Conn. 11; 1 Vernon 217; 3 Peere Wms. 158; 7 Ves. 453, note 1; 3 Bro. C. C. 199; 3 Kent Com. 37.

In the case at bar, the title to the real property never vested in the partners.  The real property was bought with the funds of

the co-partnership, and the intention was to use it in discharging the debts. Under such circumstances there is no doubt of the validity of the deed and of the assignment. The fraud is positively denied.

DAVIS, COCKE and GOODWIN, *contra.*

The CHANCELLOR.

The state of facts shown by the pleadings, so far as they are necessary to the consideration of this motion, are these. In 1835 Whitton & Hulbert formed a mercantile partnership. Whitton was to furnish the capital stock; was to have five per cent. commissions for purchasing. Hulbert was to take charge of, and superintend the business of selling, and to receive a salary of from three to eight hundred dollars per year. The partnership was to continue for six years; neither party was to sell without the consent of the other. The capital stock was to remain the exclusive property of Whitton. Hulbert was to share equally in the profits only, and bear equally the losses. Upon these terms the partnership went into operation in the town of Columbus, Mississippi, and continued until the fall of 1837, when Hulbert, in the absence of Whitton, and without his knowledge, sold the entire concern to the defendant, James H. Smith, for upwards of thirty thousand six hundred dollars, to be paid for in part by lands at four dollars per acre, to be selected from ten thousand acres owned by Smith in the Choctaw District of lands, for the conveyance of which Smith gave his bond to Whitton and Hulbert jointly. That Hulbert afterwards, from excessive dissipation, became deranged, and incapable of business.

In this state of things it is charged that the defendant, Butterworth, having possession of a number of claims for collection against the firm of Whitton & Hulbert, induced Hulbert to surrender to Smith the title bond made to Whitton & Hulbert, and to get Smith to make a deed for the lands directly and absolutely to Butterworth, for the purpose of securing the payment of the claims held by him, and that thereupon he, Butterworth, would make a declaration of the trusts, upon which he held the lands

so conveyed to him; all of which was done, as appears by the exhibits in the case.

Whitton, who was absent residing in one of the northern states, being advised of this state of things, came on to this country, and electing to consider the transactions between Hulbert and Butterworth as void, procured from Hulbert a power of attorney authorizing him to transfer all lands or other effects held in the partnership name, for the purpose of paying the partnership debts. That Whitton accordingly transferred and conveyed amongst other things all interest in the lands aforesaid to the complainant, A. G. Weir, in trust for certain preferred creditors, who, together with Whitton & Hulbert, have filed this bill to set aside the conveyance to Butterworth, and to subject the lands to the purposes of the deed to Weir, and in the mean time to enjoin Butterworth from selling the lands.

These are the statements of the bill. The material facts are not varied by the answers, except as to the charges of fraud and the incapacity of Hulbert, both of which are positively denied.

The only point in the pleadings which I consider it necessary to examine under this motion, is that which questions the validity of the transactions between Hulbert, Butterworth and Smith; and in doing this, it is proper to advert first to the sale made by Hulbert to Smith, of the entire partnership stock of Whitton and Hulbert, and to inquire what effect that sale had upon the partnership relation. That a partnership should no longer exist after the business for which it was created has ceased or terminated, is a proposition so natural and reasonable as to be self-evident. *Extincto subjecto tollitur adjunctum*, is alike the maxim of the civil law and of common sense. Hence it has been held, that a sale or assignment by one partner, of all his interest in the concern, operates *ipso facto* a dissolution of the partnership, and this, too, although it may be stipulated in the articles of partnership that it should continue for a specified term of years. There is no such thing as an indissoluble partnership. 19 —— R. 538.

One of the undisputed canons of the law of partnership is, the right of each partner to sell the whole partnership property, if the sale be free from fraud on the part of the purchaser, and such a

sale terminates the partnership relation. The sale, then, made by Hulbert to Smith, of the partnership stock, dissolved the partnership between himself and Whitton. The bond taken from Smith to Whitton and Hulbert for the conveyance of the lands, given in part consideration of the purchase of the goods, created a joint tenancy, in relation to those lands, between Whitton and Hulbert. From this view of the case, it will be readily seen that no subsequent act of Hulbert could affect any interest which Whitton thus acquired in the lands agreed to be conveyed; first, because, by the terms of the partnership, the capital stock being the exclusive property of Whitton, and the land being the representative of that stock, and the partnership being dissolved, Hulbert had no just right to it, nor power nor authority over it, as respects Whitton. If the bond of Smith has passed a legal title to Whitton and Hulbert, Hulbert might, no doubt, have passed his joint interest to a purchaser without notice of Whitton's equity. But the bond creating a mere *equitable* title, even if Hulbert had undertaken to sell *merely* his undivided interest, his vendee would have been subjected to Whitton's prior equity.

I have thus far supposed that Hulbert actually made some assignment or conveyance of the lands; but how do the facts of the case stand? It seems that it was verbally agreed that the bond of Smith should be given up to him, and that Smith should convey absolutely and directly to the defendant, Butterworth, which appears to have been done. This arrangement being made without the knowledge or assent of Whitton, was a fraud in law, if not in fact, upon his rights, and consequently could not divest his interest. Did it legally divest the interest of even Hulbert? The bond from Smith conveyed to Hulbert, jointly with Whitton, an equitable title to the lands, which the bare surrender of the bond to Smith could not divest. The law is well settled upon this subject. Where a deed has been once duly executed and delivered, a subsequent surrender and destruction of it cannot divest the estate of the grantee which passed by that deed. The title to the lands, then, remain as they were at the execution and delivery of the bond for title to Hulbert, viz. the mere formal equitable title to a part in Hulbert, which he would be decreed to hold in trust for

Whitton, according to the terms of the article of partnership.　Although I am of opinion that no title whatever would pass under any sale which might be made by Butterworth, under the anomalous instrument declaring a trust, nor under his deed, yet, as such a sale might cast a shadow over the title of the complainants, and embarrass them in the assertion of their rights, this fact alone would induce a court of equity to interpose.　That constitutes a reason why the injunction should not be dissolved.　It must be retained until final hearing.