### J. M. MYERS v. PETER TYSON.
#### No. 31.

1. PARTNERSHIP PROPERTY—*Creditors Have no Lien.* As a general rule, the simple contract creditors of a partnership have no lien upon the partnership property until it is acquired by process of law; and a *bona fide* transfer of the partnership property, while it remains within the control and possession of the firm, made upon sufficient consideration and with the consent of all the partners, places it beyond the reach of the partnership creditors. (*Woodmansie v. Holcomb*, 34 Kan. 35.)

2. ———— *Transfer for Individual Debts.* While the partnership remains in existence and in a solvent condition, it may, upon a *bona fide* consideration, all the partners assenting, transfer and appropriate the firm property in payment of the individual debts of its members, and mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property and of the right to dispose of the same as they may

choose; and where the separate creditor purchases from the firm in good faith, and the individual indebtedness is a fair price for the property purchased, such purchase cannot of itself be held fraudulent as against the general creditors of the firm.

3. JURY FINDING, *not Disturbed.* A general jury finding, based upon disputed facts and conflicting testimony, and being approved by the district court, will not be disturbed. (*Morris v. Trumbo,* 1 Kan. App. 150.)

MEMORANDUM.—Error from Riley district court; R. B. SPILMAN, judge. Action in replevin brought by Peter Tyson against J. M. Myers. Judgment for plaintiff. Defendant brings the case here. Affirmed. The opinion herein, filed January 9, 1896, states the material facts.

*John E. Hessin,* for plaintiff in error.
*Kimble & Brock,* for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J.: This action was brought in the district court of Riley county by Peter Tyson to recover of J. M. Myers various items of personal property, consisting of a stock of agricultural implements, horses, wagons, buggies, and harness. Myers was at the time of the commencement of the action sheriff of Riley county, Kansas, and had levied upon the property in controversy by virtue of a writ of attachment issued out of said district court in favor of the St. Joseph Plow Company against the firm of Leach & Tyson, a copartnership consisting of Thomas Leach and F. B. Tyson. Prior to the issuance of the writ, Leach & Tyson had been engaged in business in Randolph in the sale of agricultural implements. The members of said firm, Thomas Leach and F. B. Tyson, were respectively the son-in-law and son of Peter Tyson, plaintiff in the court below. The plaintiff claimed to

30—2 APP.

have purchased the articles of personal property from Leach & Tyson before the levy was made, and was therefore the owner and entitled to the immediate possession thereof.   The defendant, acting under the instructions of the St. Joseph Plow Company, upon this suit being brought, gave bond and retained the property, claiming that the sale and transfer by Leach & Tyson to the plaintiff was a fraud on the rights of the defendant and other creditors, and was therefore void.   The case was tried by a jury and a general verdict rendered for Peter Tyson, plaintiff below. Motion for new trial was filed and overruled.   No special findings were asked by either party or returned by the jury.

Myers brings the case here for review, alleging error in the giving of certain instructions to the jury and in overruling the motion for new trial.   The record discloses that for some time prior to the sale to Peter Tyson, which occurred about the 15th day of October, 1890, the firm had been in business in Randolph, and the management thereof had been principally with the partner Leach, Tyson having been engaged in other pursuits; that as a firm and individually they had borrowed money from Peter Tyson, and their indebtedness to him up to the time of the sale had not been paid; that at about the time this sale was made, or shortly before, the firm, being satisfied that they could not meet all their obligations, concluded to make a preferred creditor of Peter Tyson, and made a proposition to him to buy their stock of implements, offering to sell the same to him for the sum of $500, which offer was by him accepted.   Whether all the property sought to be recovered in this action was included in the sale or not, we are unable to tell from the record, as all of the testimony upon that proposi-

tion is not preserved, as it is shown that a bill of sale was given, together with an inventory, neither one of which is incorporated in the record.    That is also the case with reference to a certain receipt passed between the parties to the transaction, which was, offered in evidence, but no record thereof made.    The value of the property claimed, as shown by the petition, is $963.89, and there is testimony tending to show that some of this property was purchased prior to the date of the sale, so that the testimony shows that the property sold by the firm to Peter Tyson was worth $829.89 ; that the amount agreed upon for the sale of this property was $500, and was paid by surrendering to the firm their note for $300 and giving to them a note for $200 due one day after date ; that this note of $200 was paid by the cancellation of certain indebtedness of the individual members of the firm, viz., Frank B. Tyson's indebtedness, $100, Leach's indebtedness, $200, making the consideration about $600 instead of $500 ; that the indebtedness of the firm to other parties was about $1,500 ; that at the time the sheriff levied upon and took these goods into his possession they were in the possession of Peter Tyson, and the key to the house, or store, in which they were situated was in his possession ; that Peter Tyson knew that the firm owed some debts, but there is no evidence to show that he knew the amount or to whom they were owed ; any information that he had on this subject was merely general.

The plaintiff in error complains of the giving of a certain instruction by the court, No. 8, which reads :

"I further instruct you, that if you believe from the evidence that the plaintiff came into the possession of the property in controversy by a sale, or sales, made in good faith and for a sufficient consideration, in payment of an honest debt or debts owed to him by F.

B. Tyson and James Leach jointly, or individually, or both, without any knowledge of fraudulent intent on their part (if in fact such intent existed), was in possession of said property, either in person or by agent, before the defendant levied upon the same by virtue of a writ of attachment under which he claims the right of possession thereto, then you should return a verdict for the plaintiff,"

And insists that the rule is: "Partnership creditors have a priority over the separate creditors of individual partners in the payment out of the partnership property, and have a *quasi* lien upon the property to enforce such payment." We cannot concur with counsel upon this proposition.

"While the firm is in existence its property may be sold by either partner, and will be followed by no claim, in law or equity, by the creditors of the firm if sold to the purchaser in good faith. · . . . The law does not provide that partnership debts may be first enforced against the joint property of the firm in preference to the individual debts of the partner, on the ground of any equity held by the creditors, but this relief is granted to the creditor on account of the equities of the partners, each one of them having the right to demand that the firm property shall be devoted to the payment of the firm debt, and shall be first exhausted before the individual estates are taken." (*King v. Sutton*, 42 Kan. 600.) See, also, *City of Maquoketa v. Willey*, 35 Iowa, 323.

In *Woodmansie v. Holcomb*, 34 Kan. 35, Mr. Justice JOHNSTON, in delivering the opinion of the court, says:

"While it is true as a general rule that, as between partners, and also as between firm and individual creditors, the partnership debts have priority over individual debts as against partnership property, yet the simple contract creditors of a partnership have no lien upon its property until it is acquired by process of law. They have what has been termed a *quasi* lien, but this arises and is derived solely through the

equitable lien of the partners.  Each partner has the right to have the firm assets applied in the discharge of the firm liabilities, and to the payment of whatever may be due him when the firm indebtedness is discharged and the partnership closed up.  This equitable claim of the partners may in many cases, with the assent of the partners, be made available to the creditors, but as no such claim or equity exists in the creditors independent of the partners, a *bona fide* transfer of the partnership property, made with the consent of all the partners, places it beyond the reach of the firm creditors.''

In support of this he cites Story on Partnership, § 258.  While the partnership remains in existence and is solvent, we think it has the right, with the consent of all its members, upon a *bona fide* consideration, to sell and transfer the firm property in payment of the individual debt of one of the firm. No such circumstances about the transaction can be held to be a fraud upon the firm creditors.  The decisions of the courts have gone further than this, and although not unanimous, the weight of authority seems to be that mere insolvency, where no actual fraud intervenes, will not deprive the partnership of its legal control over the property and its right to dispose of it as it may choose, and where the separate creditor purchases from the firm in good faith (and individual indebtedness is a fair price for the property purchased), such purchase cannot of itself be held fraudulent as against the general creditors of the firm.  (*Sigler v. Knox County Bank*, 8 Ohio St. 511; *Schmidlapp v. Currie*, 55 Miss. 597; *Case v. Beauregard*, 99 U. S. 119·; *National Bank v. Sprague*, 20 N. J. Eq. 13; *Wilcox v. Kellogg*, 11 Ohio, 394; *Gwin v. Selby*, 5 Ohio St. 96; *Allen v. Center Valley Co.*, 21 Conn. 130; *Rice v. Barnard*, 20 Vt. 479; *Haben v. Harshaw*, 49 Wis. 379; *White v. Parish*, 20 Tex. 688;

*Schaeffer v. Fithian,* 17 Ind. 463 ; *McDonald v. Beach,*
2 Blackf. 55 ; *Ruffin, ex parte,* 6 Ves. 119 ; *Whitton v.
Smith,* 1 Freem. Ch. 231 ; *Freeman v. Stewart,* 41
Miss. 138 ; *Potts v. Blackwell,* 4 Jones [N. C. Eq.],
58.)

We do not think that the court erred in giving this
instruction.    We have carefully examined the record
and evidence submitted at the trial of this case, and
even were it admitted that there was any fraudulent
intent upon the part of Leach & Tyson as against their
creditors, Peter Tyson did not participate therein, or
have the slightest knowledge thereof, and in cases of
this kind, where the sale made is alleged to be fraud-
ulent, there must be participation in the fraud on the
part of the grantee, or at least knowledge of the in-
tended fraud of the grantor must be shown, or the
sale will be upheld.    This is the doctrine laid down
by the supreme court of this state, and we cannot say
that any prejudicial error was committed at the trial.
There was evidence submitted tending to prove every
material fact found by the jury that authorizes the
verdict that was returned, and the question having
been passed upon by the jury, and its findings ap-
proved by the trial court, this court cannot disturb
the judgment.    We must hold, in accordance with
the established principles and repeated decisions, that
the general finding and judgment include every ma-
terial fact necessary to sustain such judgment, and
that in legal contemplation there is a finding by the
jury that the sale of the property in question was
made in good faith, upon a sufficient consideration,
and that Peter Tyson was a *bona fide* purchaser thereof
and entitled to its possession. ( *Weil v. Eckard,* 37
Kan. 700 ; *Morris v. Trumbo,* 1 Kan. App. 156.)

The judgment in this case will be affirmed.

All the Judges concurring.