Allen
*v.*
Center Valley
Company.

ALLEN and another *against* THE CENTER VALLEY COMPANY

and others.

Though the creditors of a partnership are entitled to a priority of payment, as between them and creditors of an individual partner, out of the partnership funds, so long as they continue partnership funds; yet they have no specific lien thereon; and while the partnership remains and its business is going on, whether it be in fact solvent or not, there is no legal objection to a *bona fide* distribution of the partnership funds among the members of the firm, or a *bona fide* change of them from joint to separate estate.

Therefore, where the partnership of *H & S*, while pursuing its partnership business, though in fact insolvent, sold and conveyed, *bona fide*, to a manufacturing company, sundry articles, being partnership property, and received in payment the stock of the latter company, to be held by *H* and *S* individually, as separate estate; on a bill in chancery, brought by creditors of the partnership against the purchasers of such articles and attaching creditors of *H* and *S* individually, claiming the application of the estate in question, or the avails thereof, to the satisfaction of the plaintiffs' claims, it was held, that they were not entitled to the relief sought.

But where there has been no such transmutation of joint into separate estate, the effects of a partnership, on its dissolution, or its open insolvency and the winding up of its concerns, may be considered and treated as a *trust fund* for its joint creditors; and a court of chancery will apply such effects in satisfaction of their claims, thus working out their equity through the lien which the partners have *inter se*.

THIS was a bill in chancery, praying for a discovery and an injunction against further proceedings at law.

On the hearing before the superior court, at *Litchfield*, *February* term, 1851, the controuling facts from which arise the questions in the case, were found to be these.

*Thomas W. Hodges* and *Byron Sage* were copartners in the city of *Middletown*, engaged in making and disposing of cabinet furniture, and, among other articles of copartnership property, used and owned by them, was a steam engine, boiler and apparatus, of considerable value. The debts of these plaintiffs were contracted by *Hodges & Sage*, while engaged in this business, and were copartnership debts.

Sometime before the 1st of *September*, 1849, *Hodges* and *Sage* had, individually, become indebted to *Josiah H. Sage*; and, on or about that time, they sold and delivered to the *Center Valley Company*, *bona fide*, said steam engine, boiler,

&c., and in payment, received eighty shares of the stock of said company, *viz.*, each forty shares, which were transferred to them individually, and as their separate estate. At this time, *Hodges & Sage* were still doing business, as copartners, at *Middletown*, although their whole assets, including said steam engine, &c., or the avails thereof, were not worth more than sufficient to pay their entire debts and liabilities. They became openly insolvent and stopped business, on the 11th day of *September*, 1849. The *Center Valley Company*, or the members thereof, as well as the other defendants, all knew that said steam engine, &c., when sold and delivered, was the copartnership property of *Hodges & Sage;* but the arrangement for the sale and delivery, and the subscription for said stock and the transfer thereof, were all made in good faith ; and the members of the *Center Valley Company* did not then know, that *Hodges & Sage* were embarrassed. On the 11th of *September*, 1849, *Josiah H. Sage* levied several writs of attachment upon joint estate of *Hodges & Sage* to secure copartnership debts due to him ; and on the same day, *Byron Sage* transferred to said *Josiah*, in part payment of separate and individual debts due from him to said *Josiah* all the several shares of the stock of said company standing in his individual name. On the 12th day of said *September, Josiah H. Sage*, to secure individual and separate debts due from *Hodges*, levied writs of attachment upon the lands and buildings of the *Center Valley Company*, and also upon said steam engine, boiler, &c., and also upon said forty shares of the stock of said company standing in the name of said *Hodges*. On the 11th day of *September*, 1849, *Hodges* mortgaged to *George W. Merills* said steam engine, boiler, &c., and the land on which the buildings of said company were situated, to secure an individual note due from him to *Merills*.

On the 19th day of *September*, 1849, *David Allen & Son* levied their attachments for copartnership debts of *Hodges & Sage* upon said forty shares of the stock of said company originally subscribed for by *Hodges*, and also upon the shares subscribed for by *Byron Sage ;* and also upon all the property claimed to belong to *Hodges & Sage*, including said steam engine, boiler, &c. And on the 12th day of *October*, 1849, *Otis Fish* attached the same property, in suits

*Litchfield,*
June, 1851,

Allen
*v,*
Center Valley
Company.

against *Hodges & Sage,* to secure copartnership debts due to him.

The case, embracing these facts, was reserved for the advice of this court as to what decree should be passed thereon.

*J. H. Hubbard* and *C. Whittlesey,* for the plaintiffs, contended, 1. That partnership property is a fund *primarily* liable to the payment of partnership debts. *Brewster* v. *Hammet,* 4 *Conn. R.* 540. *Barber* v. *Hartford Bank,* 9 *Conn. R.* 407. 410. *Witter* v. *Richards,* 10 *Conn. R.* 37. *Filley* v. *Phelps,* 18 *Conn. R.* 294. *United States* v. *Hack,* 8 *Pet. R.* 275. 3 *Kent's Com.* 54.

2. That upon the insolvency of a partnership, the partnership creditors have a lien or equity upon partnership effects for payment of partnership debts. 2 *Sto. Eq. p.* 500. § 1253. *Story* on *Partn. p.* 511. § 360, 1. *p.* 137. § 97. 3 *Kent's Com.* 65. *Deveau* v. *Fowler,* 2 *Paige,* 400. Here, the partnership of *Hodges & Sage,* at the time of the appropriation of this property to the *Center Valley Company,* was insolvent, and also at the time that *J. H. Sage* attached and received this stock.

3. That the plaintiffs' attachment, being in aid of their equity as creditors, holds the specific property against the *Center Valley Company;* because, first, the partnership of *Hodges & Sage* being insolvent, at the time the property was appropriated, could not make such a disposition of it; secondly, such a disposition of it, in payment of the individual subscriptions, so far as the partnership or partnership creditors, are concerned, was voluntary and upon no consideration; and thirdly, the *Center Valley Company,* knowing that it was partnership property, had constructive notice of its liability for the debts of the partnership, and took it subject to those liabilities.

4. That the *Center Valley Company* are not injured, by our holding the specific property; they having paid nothing for it.

5. That stock received and attached by *J. H. Sage,* is, in equity to be considered as partnership property, at the time he attached and received the same, and primarily liable to our attachment, because it is partnership property in another form. Equity regards as partnership property what-

soever is purchased with partnership funds, or comes in lieu *Litchfield,* June, 1851. of them, so long as they can be distinguished ; and any one receiving it, with knowledge, takes it *cum onere.* 2 *Sto.* *Eq. p.* 452. § 1207. *Story* on *Part. p.* 137. § 97. And that too, without regard to whose name it stands in.

*Allen* *v.* Center Valley Company.

6. That this stock, being the fruit of partnership property, the partnership being insolvent, at the time it was received and attached by *J. H. Sage,* and standing in their individual names, constitutes a *resulting trust* for the partnership ; on the principle, that when a purchase is made, and the title taken in the name of a third person, he holds it *in trust* for the person paying the money. 2 *Sto. Eq. p.* 443. § 1201. *p.* 440. § 1197. In case of insolvency, equity considers the partnership funds as a *trust fund,* and the partners as *trustees* of it, for payment of partnership debts, and the creditors as the ultimate *cestuis que trust.* 2 *Sto. Eq. p.* 500. § 1253. *p.* 451. § 1207. *Bisset* on *Part.* 72. 3 *Kent's Com.* 59. The members of an insolvent partnership cannot divide partnership property, and apply it in payment of antecedent individual debts. *Burtus* v. *Tisdall,* 4 *Barb. Sup. Ct. Rep.* 571. 3 *Kent's Com.* 64.

7. That *J. H. Sage,* before and at the time he received this stock, knowing that it was the product of partnership effects, and that the partnership was then insolvent, took it and attached it, subject to the equitable right of the creditors. A purchaser with notice of the equitable rights or title of others, takes subject to those equitable rights. 2 *Sto. Eq. p.* 503. § 1258, 9. *p.* 241. § 977. 1 *Sto. Eq.* 393. 398. 2 *Fonb. Eq.* 146, 7.

It does not alter the case, that this property was not appropriated to the *Center Valley Company* and attached and received by *J. H. Sage,* with *design* to defraud partnership creditors. It was a *constructive* fraud on them, and done with knowledge. The equities are with the plaintiffs.

*Seymour* and *H. Goodwin,* for the defendants, contended, 1. That while the partnership is going on, the creditors of the partnership have no equity in the partnership property. *Story* on *Part.* 505. § 358. *Gow* on *Part.* 235. Ex parte *Williams,* 11 *Ves.* 5, 6.

2. That partners may sell to one member of the firm, or

they may sell to any one else, the copartnership property (if done *bona fide*,) and the sale will be good, and free from the claims of partnership creditors. *Story* on *Part.* 509. § 358. *Bisset* on *Part.* 71, 2. 2 *Sto. Eq.* 500. § 1253. An appropriation of the partnership property in payment of the individual debts of the partners, is valid, if done with the consent of all the partners. 12 *Pet. Rep.* 221.

3. That if partnership property is disposed of, in the manner in which the superior court have found this to have been, and while the partnership was going on, the property will be held to possess the character impressed upon it, at the time of the open bankruptcy of the partnership. *Bisset* on *Part.* 72.

4. That if *Hodges & Sage*, by their mutual act, have sold the partnership property, which has in effect been, in good faith, converted into the separate property of the several partners, it then immediately becomes a fund to which the separate creditors of each partner may resort. *Coll. Part.* 90.

5. That the partnership creditors of *Hodges & Sage*, before their failure, had no superior right to the partnership property. They could have sued the company, and perhaps created a demand, which might reach the partnership effects. But they had no lien, in law or equity. *Bisset*, 70. § 1.

CHURCH, Ch. J. These plaintiffs have similar interests, but not a joint one, in the object of their application.

The controversy here is between the plaintiffs, as copartnership creditors of the firm of *Hodges & Sage*, and the defendants, as the separate creditors of, or claimants under, *Hodges* and *Sage*, individually. The plaintiffs go especially for the steam engine, boiler, &c., which were, confessedly, joint copartnership estate, when their debts were contracted, and prior to the sale and delivery of them to the *Center Valley Company ;* or they claim the stock, which was the avails thereof, notwithstanding the manner in which it was subscribed for and taken.

The claim of the plaintiffs is based upon what they supposed to be the true doctrine of courts of equity on this subject—that the creditors of a copartnership have a lien, or such an equitable claim, upon its assets, that upon its insolvency, they can make them applicable to the payment of

their joint debts in preference to any claims which the sepa-  *Litchfield,* June, 1851.
rate and individual creditors of the respective copartners
can make to them.

Allen
*v.*
Center Valley
Company.

There certainly is very strong language found in the books
in support of this general claim of the plaintiffs. Thus, it
is said, in *Brewster* v. *Hammett,* 4 *Conn. R.* 540. that "the
*equitable property* in the goods attached *is vested* in the cred-
itors of the copartnership ;" and in *Witter* v. *Richards,* 10
*Conn. R.* 37. the court says, "that the partnership creditors
generally *have a right* to the partnership effects, in prefer-
ence to the creditors of an individual partner, has not been
disputed." And in *Filley* v. *Phelps,* 18 *Conn. R.* 296. the
doctrine is declared to be, "that partnership debts are to be
paid out of partnership funds, in preference to debts against
any individual member of the company." In the case of
*Burtus* v. *Tisdale,* 4 *Barb. Sup. Ct. Rep.* 588. *Strong,* J.
says, "It is clearly settled, that the joint creditors have then
the first *equitable claim* upon the whole for the satisfaction
of their debts." Sometimes the copartnership property is
called a *trust fund* for the benefit of creditors, and some-
times it has been said, that the copartnership creditors have
a lien, or a *quasi* lien, upon it. But whatever may be the
exact nature and extent of their rights, we think it certain,
that they have at least a claim of *priority of payment* out of
the joint funds, so long as they continue to be joint. *2 Sto.
Eq.* § 1253.

That copartnership creditors have no specific lien, legal
or equitable, *a priori,* upon the joint funds, we consider to
be well settled ; no more than any individual creditor has a
lien upon the private estate of his debtor. In either case,
the lien is created by the levy of the writ of attachment or
of execution upon the property of the debtor. The part-
ners have the lien, and especially the solvent ones, and have
a right to insist, that the joint funds shall pay the joint debts,
and in this way and by enforcing the equities or lien of the
partners, the creditors of the copartnership come to their
rights, whatever they are, and thus these rights are *worked
out,* as the authorities say. This has been the received doc-
trine on this subject ever since the case of ex parte *Ruffin,*
6 *Ves.* 119. decided by Lord *Eldon,* in 1801. *Campbell* v.
*Mullett,* 2 *Swanst. Ch. R.* 550. *Bissett* on *Part.* 106. *Gow*

on *Part.* 296.    *Collyer* on *Part.* 337.    *Story* on *Part.* § 326. 2 *Sto. Eq.* § 1253.    If therefore, the partners have the lien, the creditors cannot have it.

As the plaintiffs had no specific lien on the steam engine, &c., on the 1st day of *September*, 1849, when it was sold and delivered to the *Center Valley Company*, their attachments not having been levied until several weeks after this, why are not this sale and its consequences to be approved and sustained ?    The plaintiffs say, because, at that time, *Hodges & Sage* were in fact insolvent, and had no right to withdraw the company assets from the reach of the copartnership creditors, and convert the avails into separate estate, to the prejudice of the joint creditors, as they have done, by the sale of the joint property, and by their separate and individual subscriptions for the stock received in payment.    If this had been done fraudulently, in contemplation of actual and open insolvency, and with a design to defeat the claims of the plaintiffs or other copartnership creditors, and with the knowledge and assent of the *Center Valley Company*, or these defendants, this claim of the plaintiffs could not be resisted—it would be sustained by the general and conservative principle, that the fraud of the parties would have destroyed the legality of the sale.

But here no fraud is proved.    It is found only, that at the time of the sale, the company assets did not exceed in value the amount of the company liabilities ; but *Hodges & Sage* were prosecuting their business, in the usual manner, and perhaps without a knowledge of their exact condition ; and, as in other cases of declared insolvency, which have been preceded, by a length of time, and sometimes, by years, wherein a comparison of assets with liabilities, would shew an insolvent condition.    And whatever *Hodges & Sage* might have suspected or even known, it is not found, that these defendants had any knowledge of their pecuniary state : they knew only, that, when the steam engine, &c., was purchased, it was copartnership property.

While the business of a copartnership is going on, and no dissolution by death, bankruptcy, insolvency, &c., requiring the marshalling of assets, there is no legal objection to a *bona fide* distribution of the copartnership funds among the members of the firm, or a change of them from joint to sep-

*Litchfield,*
June, 1851.

Allen
*v.*
Center Valley
Company.

arate estate. Indeed, it is the purpose of all business operations, whether copartnership transactions or otherwise, to benefit individuals. And copartners always act for the ultimate advantage of themselves individually, and with the intent that the property and its avails shall, at some day, become separate estate.

The leading case of Ex parte *Ruffin*, before cited, fully recognises the right of copartners to convert joint into separate property, even to the very time and by the very act of dissolution. Lord *Eldon* says, " Therefore a *bona fide* transmutation of the property, is understood to be the act of men, acting fairly, winding up the concern, and binds the creditors." And again, " To say this, seems to me a monstrous proposition, that, which, at any time during the partnership, has been part of the partnership effects, shall, in all future time, remain part of the partnership effects, notwithstanding a *bona fide* act." Considerations of public policy were strongly urged, by Sir *Samuel Romily*, in that case, in opposition to this view of the Lord Chancellor; but he resisted them, and expressed the opinion, that a contrary doctrine would, in the absence of fraud, put a stop to all commercial transactions. *Bisset,* a respectable writer on the law of *Partnership*, says, in view of all the authorities on the subject, " that notwithstanding the rights of the joint creditors, the partners may convert the joint property into separate property; for having no lien on the property, the joint creditors, when notice of dissolution is given, cannot prevent the partners from effectually transferring it, by *bona fide* alienation," &c. And again, he says, " The partners may, during the partnership, convert joint into separate property, or separate into joint, and the property will, at the dissolution, be held to possess that character which is then impressed upon it." *Bisset* on *Part.* 108. 111. *Gow* on *Part.* 296. *Collyer* on *Part.* 334. 511. *Story* on *Part.* 527. *Kimball* v. *Thompson*, 13 *Metc.* 283.

Let these principles be applied here. *Hodges & Sage*, about the 1st day of *September*, 1849, while pursuing the copartnership business, sold and delivered to the *Center Valley Company* the steam engine, boiler, &c., in question, and received in payment the stock of the company, as separate estate, which has since been transferred to and attached

by *Josiah H. Sage,* a separate creditor ; and all this, some time before the actual failure and open insolvency of the copartners, and several weeks before the plaintiffs had any pretence of lien upon it, by their attachments.

It must follow, we think, that there was no trust attached to this property in the hands of these defendants. To hold otherwise, would defeat the operation of the principles we have recognised, and be equivalent to the doctrine, that, what has been, must ever be, copartnership property, until all joint debts are paid, and thus obstruct ordinary copartnership dealings.

Had fraud been proved, and the rights of these creditors recognised, a further question suggested in the argument, would have claimed more of our attention : whether these plaintiffs, as copartnership creditors, could have enforced their prior rights in this way ?

The language of the books is, that the rights and equities of the joint creditors are to be worked out only through the lien or equities of the partners.

That this is generally true, we admit ; and especially, where there is to be a settlement of a partnership concern, either by the partners themselves, or by a solvent partner, or a surviving one, or by an administrator, assignee, or receiver, &c. But there are cases of a different character ; and this is one of them ; and so were the cases of *Brewster* v. *Hammett,* 4 *Conn. R.* 540. and *Witter* v. *Richards,* 10 *Conn. R.* 37. Here, the partners, *Hodges* and *Sage,* are both insolvent, and take no interest in the settlement of their former business, but leave the creditors of the copartnership to take care of themselves ; and here have been no proceedings, by any body, in the way of making distribution or marshalling assets. In the case of *Brewster* v. *Hammett,* this court refused to take the copartnership effects out of the hands of a separate attaching creditor, and place them back again into the hands of insolvent partners, because that would *defeat the rights* of joint creditors ; and in such a case, it was supposed, that the copartnership creditors had an equitable property in the goods attached by a separate creditor, which they could themselves enforce, independently of the insolvent partners. And in the case of *Witter* v. *Richards,* the court recognized and enforced the preferable

claim of copartnership creditors to the joint effects against a prior attaching creditor of one of the copartners upon their own application, where both partners were insolvent. In such cases of insolvency, it may well be said, we think, that the joint effects, then remaining, may be treated as a *trust fund* for joint creditors, who will be substituted in equity to the rights of the partners, and be permitted to pursue the proper remedies to enforce their prior rights, as was done in the above cited case of *Witter* v. *Richards*, 10 *Conn. R.* 37.  2 *Sto. Eq.* 500. § 1253.   But, as we have seen, the facts of this case do not call for the application of such a principle, inasmuch as the plaintiffs have not clearly established a prior or preferable right : so that we must advise, that their bill be dismissed.

In this opinion the other Judges concurred.

Bill dismissed.