Bigelow, J.
Upon the facts reported by the master in this case, two questions arise.
The first is, whether the property, which belonged to the partnership of Shaw and Gardner, and which, upon the dissolution of the partnership, on the twenty-fourth of January, 1851, was sold and transferred by Shaw to Gardner, is to be treated as the separate estate of Gardner, and to be appropriated as such to the payment of his separate debts; or whether, notwithstanding the sale and transfer by one partner to the other, it is still to be regarded as joint estate, and to be applied to the payment of the debts of the partnership according^-
The right of copartners upon dissolution to transfer the joint property to one of the firm, is clear and unquestionable. The effect of such transfer as between the partners is to vest the legal title to the property in the individual partner, with a right to use and dispose of it as his separate estate. It would seem to follow as a necessary consequence, that the creditors of the firm, after such conveyance, would have no right to look to the property transferred as joint property, upon which they had any special claim or lien. If in such transfer there is no fraud and collusion between the copartners for the purpose of defeating the rights of the joint creditors, and the transaction is made in good faith, upon dissolution, and for the purpose of closing the affairs of the partnership, the joint property thereby becomes separate estate with all the rights *556 and incidents both in law and equity, which properly attach thereto. The mere fact of the transfer of the property does not in any way affect the rights of the joint creditors. During the continuance of the partnership, and before the institution of proceedings in insolvency, the creditors of the firm have no specific claim or lien, and, strictly speaking, no equity as against .the effects of the partnership. They can only institute actions at law for their debts against the firm on which they can take the partnership property, or the separate estate of each partner, or both, for the purpose of satisfying the executions, which they may obtain upon their judgments against the firm. The joint property, after its transfer to one of the copartners, is equally within the reach of legal process by the creditors of the firm as if it had remained the property of the partnership. Beyond this right to seize the «joint property on legal process, the creditors of the firm, before proceedings in insolvency, have no control over the partnership effects, and no right, either in law or equity, to restrain the disposition of them. The' partners have the power to transfer them for a valuable consideration to each other or to strangers. The only limitation upon this right is, that it shall be exercised bond fide, and without any intent to defraud the creditors of the firm or to deprive them of their legal or equitable claims upon the joint estate in case of insolvency. The bond fides of the transaction is, therefore, the only test by which to determine the right of joint creditors to have property, which has been transferred upon dissolution to an individual member of the firm, applied to the payment of the joint debts. If the transfer has been made honestly and for a valuable consideration, the property has thereby become separate estate, wholly free from any claims of the joint creditors. These principles are fully recognized in the adjudged cases both in this country and in England. Collyer on Part. §§ 174, 894, 903; Story on Part. § 358; Ex parte Ruffin, 6 Ves. 127; Ex parte Fell, 10 Ves. 347; Ex parte Williams, 11 Ves. 3; Ex parte Rowlandson, 1 Rose, 416; Campbell v. Mullett, 2 Swan. 575: Allen v. Center Valley Co. 21 Conn. 130, 137; Ferson v. Munroe, 1 Foster, 462, 469.
*557 These cases also recognize it as a settled rule that joint estate is not, so far as the rights of creditors are concerned, that which was such at the time of the dissolution, but that in which the partners are jointly interested for the purposes of the partnership and the settlement of its concerns at the time of the institution of proceedings in insolvency by a member of the firm.
The application of these principles to the present case is decisive against the right of the joint creditors to require the property, transferred by Shaw to Gardner, to be appropriated primarily to the payment of the debts of the firm. Primd facie it is the separate estate of Gardner, and the burden is on the petitioning creditors to show that it was conveyed to him maid fide and in fraud of the rights of creditors. There is nothing in the facts reported by the master from which any such inference can be fairly made. The dissolution took place, because the parties were mutually dissatisfied, and the retiring partner relinquished his right to the partnership property, in consideration of an agreement by his copartner to assume and pay the debts of the firm. It is not pretended that the business of the firm has resulted in any surplus, nor that the agreement to pay the debts was not a fair and full consideration for the transfer of the retiring partner’s interest in the partnership property. The subsequent conduct of Gardner is strongly confirmatory of the good faith of the transaction. He continued to carry on the business, formerly conducted by the firm, and notified the creditors by letter of the dissolution, and that the business would be continued by himself. While he so carried on business on his sole account, he made considerable additions to the stock on his own credit, amounting to five or six hundred dollars. Nor is there any positive evidence that either of the copartners, at the time of the dissolution, knew or believed that the copartnership would not be able to pay its debts in full, although in fact it subsequently turned out to have been at the time insolvent. Even if it were insolvent within the knowledge of the partners, at the time of the dissolution and the transfer of the property, it is by no means certain that the transaction would then bp *558 fraudulent. Collyer on Part. § 902; Ex parte Peake, 1 Mad. 346. But it is sufficient for the present case that there is no proof of any such knowledge by either of the copartners.
It is not to be inferred, however, that any conveyance or transfer of joint property to a copartner made with a knowledge of the insolvency of the firm and with an intent to deprive the creditors of its proper application to the payment of the joint debts, would defeat the right of the joint creditors in proceedings in insolvency to follow the partnership effects and have them appropriated to the payment of the debts of the firm. Such conveyance would be in fraud of the law, and equity would at once set it aside. It is only where partners act fairly for the purpose of dissolution and winding up the affairs of the firm, that creditors will be bound by a change of the partnership property, to the separate estate of one of the copartners.
It was urged by the counsel for the petitioners, that, as co-partners have a lien upon the partnership effects for the discharge of all the debts of the firm, even after a dissolution, this lien might be made available in the present case for the benefit of the joint creditors; and that in this way the equities of the creditors might be worked out through the medium of that of the retiring copartners. It is undoubtedly true, in the absence of any special agreement between copartners, as to the application of the partnership effects after dissolution, that a retiring partner retains a lien upon them to the extent of enforcing their application to the payment of the joint debts, and that creditors, though they have no lien on the property in their own right, are allowed in equity to assert a quasi lien by administering the equities between the partners themselves. But it is equally well settled that a retiring partner may relinquish this lien, in which case he has no equity through which the creditors of the firm can work out their own. By the transfer of the joint property to his co-partner, and taking his personal contract and security for the payment of the joint debts, he discharges his lien and substitutes therefor the agreement of his copartner, to which he can alone look for his remedy, in case he is called on to pay the *559 debts of the firm. There is no duty left on the property, but only a personal obligation by one copartner to pay the joint debts. The creditors in such case cannot rest upon the equity of the outgoing partner. Collyer on Part. § 894; Story on Part. § 359; Ex parte Ruffin, ubi sup.; Ex parte Williams, ubi sup. The transfer in the present case falls within this principle. Shaw, the retiring partner, relinquished all his right to the property of the firm, in consideration of a promise by Gardner to pay all the debts of the firm. Shaw, therefore, has no lien which can be enforced for the benefit of the joint creditors, upon the partnership effects. The property was transferred absolutely, discharged from any lien or trust, which would have attached to it in the absence of any special agreement between the partners respecting it.
The remaining question presented by the petitioners is, as to the right of the joint creditors of the firm to prove their debts against the separate estate of Gardner, and take dividends thereon pari passu with the separate creditors. This claim is founded upon the recognized exception to the general rule of applying joint estate to the payment of joint debts, and separate estate to the payment of separate debts, which has been established by the English courts in bankruptcy. That exception is, when there is no joint estate and no solvent partner, the joint creditors are allowed to prove and share equally with the separate creditors in the separate estate. It is a sufficient answer to this claim of the petitioners, that the statute of 1838, c. 163, § 21, recognizes no such exception to the rule therein prescribed for the distribution of the assets of insolvent debtors. The rule is distinct and peremptory, requiring the net proceeds of the joint stock to be appropriated to pay the creditors of the firm, and the net proceeds of the separate estate of each partner to be appropriated to the payment of the separate creditors. This provision was reported by the learned commissioners who drafted the insolvent act, and enacted by the legislature with a full knowledge of the exceptions which had been engrafted on the general rule of distribution by the course of judicial decisions in England. They designedly omitted them. We know of no rule of con *560 struction by which we can now undertake to add them to the statute. The rule fixed by the statute may sometimes operate harshly, as all general rules do, but it is definite, clear, and easily applied. The exceptions to it are artificial and refined, leading to nice and subtle distinctions, and sometimes operating with great inequality and injustice. Indeed, it has been said by high authority, that the character of these exceptions has rendered the foundation of the general rule, as one of justice and equity, open to criticism and question, and difficult to be sustained. Story on Part. §§ 379, 382. Under such circumstances, we are unwilling to adopt it into our jurisprudence. The rule fixed by the statute must be adhered to. If there is no joint estate and no surplus of the separate estate after paying the separate debts, the creditors of the partnership can receive no dividend.
Such being the legal and equitable principles applicable to the case made by the petitioners before the commissioner of insolvency, it is clear that there is no ground for maintaining the petition.

Petition dismissed.