## Ivory Harmon & another *vs.* Moses Clark & another. Moses Clark & another *vs.* Ivory Harmon & another.

The assignee of the estates of both partners under distinct proceedings in insolvency must administer the estate of the partnership.

Partnership property, conveyed, upon a dissolution of the partnership, to one of the part-ners, who agrees to hold and convey one half of it to his copartner after paying the debts of the firm, is to be applied, in case of the insolvency of both partners, to the payment of the partnership debts.

Partnership property, mortgaged by the partners to secure a joint and several note signed by them individually for money which was applied to the separate use of one partner, was appropriated by the assignees of the partnership to the payment of that note. *Held*, that the estate of the partnership was not entitled, in insolvency, to any contribution from the estate of that partner.

PETITIONS to this court in the exercise of its chancery jurisdiction in insolvency. Hearing at February term 1858 in Norfolk, before *Merrick*, J., who reported to the full court the following case :

Horace King and Jacob B. Flagg on the 23d of May 1856 were, and for a considerable period previous to that time had been copartners in business under the name and firm of J. B. Flagg & Company, for the purpose of maintaining and running a line of omnibus coaches to and from the cities of Boston and Roxbury ; and were then, and had before been owners, in their copartnership capacity, of many coaches, horses and other personal property used in their said business ; and they were then, and for a considerable period of time previously had been indebted, in their said copartnership capacity, to many persons in various sums of money.

On the 23d of May 1856 King and Flagg dissolved their said copartnership by mutual consent ; and thereupon all the copartnership property of every description was transferred by Flagg to King ; and King, in consideration of said conveyance, did promise and agree with Flagg, that if the property so conveyed should be insufficient to pay and discharge all said debts of the partnership and the incumbrances on the property, he would indemnify and save the said Flagg harmless therefrom ; and King thereupon made, signed and delivered to Flagg this agreement :

" Yarmouth, Maine, May 23d 1856. This is to certify that I, Horace King of Roxbury, State of Massachusetts, do agree to hold and convey to Jacob B. Flagg of Roxbury one undivided half of the stage or omnibus line now running between Roxbury and Boston, when the line is clear from the incumbrances now upon the said line, and the debts it is now owing.

" Horace King."

At the time of the conveyance of Flagg to King, all the prop-erty belonging to the firm of J. B. Flagg & Company was subject to two mortgages, each executed by King and Flagg in their individual capacities, to secure the payment of their joint and several note of the same date, the first to the Rockland Bank for the sum of $20,000, and the other to Thomas Adams, for the sum of $10,000, for moneys, in each case, lent to King and Flagg in their individual capacities; and for which no note or security was given by or in the name of J. B. Flagg & Company. By agreement of the partners between themselves, the whole of the money so borrowed of Adams, and $12,000 of the money borrowed of the Rockland Bank, was taken and appropriated by King to his own sole and private use, and the remaining sum of $8,000 was taken by the firm of J. B. Flagg & Company and appropriated to partnership purposes.

On the 13th of June 1856 King applied to a commissioner of insolvency, describing himself as " omnibus proprietor, late copartner with Jacob B. Flagg," representing " that he is jointly and severally indebted, in divers sums of money, amounting, in the whole, to not less than two hundred dollars, which he is unable to pay in full, and he wishes to surrender all his joint and several property, for the benefit of his joint and several creditors, and to obtain a discharge from his said debts, accord-ing to the statutes in this behalf provided; " and praying " that a warrant may be issued for taking possession of his joint and several estate; " and a warrant was issued thereon to take pos-session of all his estate, returnable on the 18th of July, when Clark and Adams were chosen his assignees, and his estate as-signed to them.

On the 2d of July 1856 Flagg applied to said commissioner, describing himself as " omnibus proprietor, late partner with Horace King; " representing " that he is indebted in divers sums of money, amounting in the whole to not less than two hundred dollars, which he is unable to pay in full, and he wishes to sur-render all his individual and partnership property, for the benefit of his individual and partnership creditors, and to obtain a dis-charge from his said debts, according to the statutes in this

behalf provided;" and praying "that a warrant may be issued for taking possession of his individual and partnership estate;" and a warrant was thereupon issued to take possession of all his estate. At the first meeting in Flagg's case, on the 17th of July, fifteen creditors proved debts against the partnership estate, and one creditor against Flagg's private estate. The creditors who had thus proved then chose Clark and Adams assignees of the joint and separate estate, by their indiscriminate votes.

Clark and Adams accepted each trust, and took possession of the property of the partnership, and administered and accounted for it as the property of J. B. Flagg & Company, and applied $30,000 thereof to the extinguishment of the mortgages to the Rockland Bank and Adams; and moved the commissioner for leave to repay from the separate estate of King to the joint estate of J. B. Flagg & Company $22,000, being the amount of the mortgage to Adams, and of so much of the money borrowed of the Rockland Bank as was applied to the private use of King. The commissioner granted the motion as to the $10,000 paid to Adams, and disallowed it as to the $12,000, part of the sum paid to the Rockland Bank.

Ivory Harmon and Henry M. Harmon, private creditors of King, petitioned this court to reverse the first part of the order of the commissioner, and to direct that the whole of the property conveyed by the partnership to King should be appropriated to the payment of King's private debts; and the assignees petitioned this court to reverse the last part of the order of the commissioner.

These cases were argued in Norfolk at November term 1858.

*W. Gaston & J. W. May*, for the creditors of King. Before the filing of either petition in insolvency, the partnership had been dissolved, and the partnership property conveyed to King; and neither partner, in petitioning for the benefit of the insolvent laws, represented the firm as in existence or insolvent, or prayed that its property be taken. In Flagg's case, the assignees were elected by the indiscriminate vote of private creditors and creditors of the late firm; whereas, if the firm was in insolvency, only copartnership creditors could have legally voted. *St.* 1838, c. 163, § 21.

1. No firm, therefore, is in insolvency by the proceedings in these cases, nor are Adams and Clark assignees of the estate of J. B. Flagg & Company. *Parker* v. *Phillips,* 2 Cush. 175. *Dearborn* v. *Keith,* 5 Cush. 225. *Thompson* v. *Thompson,* 4 Cush. 133. *Hanson* v. *Paige,* 3 Gray, 239.

2. By the dissolution and conveyance, the property, formerly belonging to the firm of J. B. Flagg & Company, became the private property of King. *Howe* v. *Lawrence,* 9 Cush. 553. *Barclay* v. *Phelps,* 4 Met. 397. *Reese* v. *Bradford,* 13 Alab. 837. Collyer on Part. §§ 894, 995.

3. If the property did not so become absolutely the private property of King, the most that can be claimed for the partnership creditors is that it remained the unappropriated property of the late firm. But in that case the partnership property must go to the partnership creditors, and the private property to the private creditors. *St.* 1838, *c.* 163, § 21. The attempt to obtain repayment to the partnership estate of the amount of $22,000 paid to extinguish the mortgage thereon is, in effect, an attempt to prove against one partner's estate a debt due to the partnership — which is not to be allowed. *Somerset Potters' Works* v. *Minot,* 10 Cush. 597. Gow on Part. 358. Collyer on Part. § 1003.

*G. T. Curtis,* for the assignees. 1. The partnership property must be administered, and the rights of the partnership creditors in this controversy enforced, through Clark and Adams, chosen assignees of both partners.

2. The partnership property did not become the separate property of King, before the insolvency proceedings. The *bona fides* requisite to convert partnership property into separate property, on a dissolution and a sale of the interest of a retiring partner to the remaining partners, is not confined to the intention of the retiring partner, but embraces the intention of all the partners in respect to the rights of creditors of the partnership. Collyer on Part. §§ 174, 894, 903. Story on Part. § 358. *Ex parte Ruffin,* 6 Ves. 127. *Ex parte Fell,* 10 Ves. 347. *Ex parte Williams,* 11 Ves. 3. *Ex parte Rowlandson,* 1 Rose, 416. *Campbell* v. *Mullett,* 2 Swanst. 575. *Allen* v. *Center Valley Co.* 21 Conn. 130. *Ferson* v. *Monroe,* 1 Foster, 462. *Howe* v. *Lawrence,*

9 Cush. 553. When Flagg conveyed his interest to King, by the agreement of the parties, the partnership property was impressed with an express trust that it should be applied *in specie* to the payment of the incumbrances and the partnership debts. The right of a retiring partner to subject the partnership property tc his lien for the payment of the partnership debts is unquestionable; and that lien, when left upon the property by the terms of the dissolution, prevents its conversion into separate esta+e. 11 Ves., 21 Conn. and 9 Cush., above cited.

3. The claim of the joint creditors to relief against the separate estate of King, on account of the diminution of the joint estate to the amount of $22,000, occurring after the insolvency, by reason of the operation of the mortgages held by the Rockland Bank and Thomas Adams, given by King & Flagg upon the partnership property, to secure the payment of money borrowed in their joint and several individual names for the separate use of King in a separate trade, is not within the decision in *Somerset Potters' Works* v. *Minot*, 10 Cush. 592. That was an attempt to prove in insolvency against the separate estate of one partner a debt due from him to the partnership, on account of advances to him in a separate trade. In the present case, a mortgage creditor, after the insolvency, having the right to resort to two funds, by resorting to the partnership estate, and taking his whole debt, diminishes the joint fund, and exonerates the separate fund.

The remedy for the partnership creditors is: (1.) By substitution to the same rights against the separate estate which the mortgage creditor had, by a decree in equity for restitution *pro tanto*. 1 Story on Eq. §§ 499, 561–567. Cox's note to *Clifton* v *Burt*, 1 P. W. 678. *Westfaling* v. *Westfaling*, 3 Atk. 467. *Davies* v. *Topp*, 1 Bro. C. C. 526. *Aldrich* v. *Cooper*, 8 Ves. 388. *Wilson* v. *Fielding*, 2 Vern. 763. *Selby* v. *Selby*, 4 Russ. 336. *Hodgson* v. *Shaw*, 3 Myl. & K. 190. *Cheesbrough* v. *Millard*, 1 Johns. Ch. 409. Or, (2.) By a decree for contribution, upon the equity that the joint estate has sustained the whole of a burden, part of which only it belonged in truth to the joint estate to sustain. *Rogers* v. *Mackenzie*, 4 Ves. 752. *Ex parte*

*Plowden,* 2 Dea. 456, and 3 Mont. & Ayrt. 402.   *Ex parte Wil-lock,* 2 Rose, 392.   *Ex parte Reid,* 2 Rose, 84.   *Ex parte Ruth-erford,* 1 Rose, 201.   There is nothing in our insolvent statutes to prevent the application of this doctrine of equity; and it may often be necessary, in cases of partnership and separate estates, for this court to exercise its equity powers in decreeing contribu-tion from the one to the other, in order to ascertain the " net proceeds " of each, which the statute directs to be distributed to its appropriate class of creditors.   *St.* 1838, *c.* 163, § 21.'

BIGELOW, J.   1.  It can make no essential difference in these cases, that the copartnership was not declared insolvent.   Each of the copartners had declared himself insolvent, and had surren-dered his joint and separate property for the benefit of his joint and several creditors.   The assignees of both estates are the same persons, and must make up separate accounts with the estate of each copartner.   In doing so, in order to ascertain whether there will be a surplus of the joint estate, to be divided between the two separate estates, and the amount of such surplus, it is neces-sary that the assets should be marshalled, and a proper applica-tion made of the joint and separate property.

2.  The facts proved do not show an absolute conversion of the partnership property into the separate estate of King at the time of the dissolution of the firm.   It is true that the legal title was vested in him; but he did not take it to be dealt with as his own, irrespectively of the right of his copartner to have it applied in payment of the debts of the firm, or of the claims of the joint creditors to insist, in case of insolvency, that the equities be-tween the partners should be worked out for their benefit by its appropriation in payment of their debts.   The conveyance was accompanied by an agreement on the part of King, which bound him to hold the property for the purpose of paying the debts of the firm, and, after their payment, to convey one undivided half thereof to his retiring copartner.   The effect of this agree-ment was to fix a trust on the property in the hands of King for the benefit of his copartner.   He could not fulfil his agreement to convey one half of the property to Flagg after the debts of the firm were paid, without first appropriating it fairly and fully

to the payment of these debts. This created a clear equity in favor of the retiring copartner. He did not assign all his interest in the property of the firm, leaving no duty on the property, and taking only the personal agreement of his copartner to pay the debts of the firm. The transfer did not convert the property into separate estate, so as to place it beyond the reach of the equity which belongs to a retiring copartner to have it appropriated toward the payment of the debts of the firm. But this equity, in the nature of a lien on the joint property, was saved by the agreement under which the property was held by King.

This therefore is not a case where the right and interest of one copartner in the partnership property have been sold absolutely and in good faith to the other copartner, in consideration of a personal agreement by the latter to assume and pay the debts of the firm; and where no right or interest in the joint property, or in its appropriation to the payment of the debts of the firm, is retained by the retiring copartner. Such a transfer would be a conversion of the joint estate of the firm into the separate estate of one of the copartners, with all the incidents which follow on such conversion in case of insolvency. *Howe* v. *Lawrence*, 9 Cush. 553. But this is a case where a trust is fastened on the joint estate in the hands of the copartner in whom the legal title and possession is vested. The right to enforce the trust thus created in favor of the retiring partner devolves, in case of insolvency, on the joint creditors, who can insist that the equitable claim of one partner on the joint estate as against the other shall be worked out and administered in their favor by a proper application of the joint estate in the hands of one partner to the payment of the debts of the firm. Story on Part. §§ 97, 326, 360. *Ex parte Ruffin*, 6 Ves. 126. *Ex parte Fell*, 10 Ves 347. *Ex parte Williams*, 11 Ves. 7. *Allen* v. *Center Valley Co*. 21 Conn. 130.

Upon this ground we are of opinion that the claim of the separate creditors of King, that the partnership property conveyed to him by his copartner on the dissolution of the firm should be treated as his private estate and distributed among his separate creditors, cannot be supported; and that the assignees.

in stating their accounts, are bound to carry the amount received by them for the sale of the partnership property to the credit of the joint estate.

3. The other question raised in these cases is, whether the joint creditors can have any relief against the private estate of King, by reason of the diminution of the joint estate, occasioned by the payment by the assignees of two mortgages on the partnership property. It appears that these mortgages were made by Flagg and King prior to their insolvency, in their individual names, and not as copartners, to secure joint and several notes signed by them individually ; and that the larger part of the money obtained by these notes and mortgages was used by King for his own private use in a separate trade. The legal effect of these transactions was to transfer partnership property to secure the separate and individual debts of the two copartners. Although the mortgages were not made or executed in the name of the firm, yet being signed by both the copartners, the entire title to the property passed by the conveyance; and thereby in fact the partnership property was lawfully pledged before insolvency to secure the payment of debts which were not the debts of the firm ; for the notes, being signed by the members of the firm individually, were not partnership debts. *Ex parte Weston*, 12 Met. 1. In this state of things, when both the debtors became insolvent, the creditors who held these notes and mortgages had their election, either to prove their entire debts against the private estates of both copartners, and relinquish their security under the mortgages ; or to apply the partnership property included in the mortgages to the payment of the debts thereby secured, and prove for the balance. In either case, they could prove against the private estates only. They in fact elected to resort to the security alone, and not to prove their debts at all. It is clear therefore that nothing has been paid by the assignees on these claims as debts proved against the joint estate. And if any such payment had been made, it would give no right to the assignees to prove the claim against the separate estate of King. *Somerset Potters' Works* v. *Minot*, 10 Cush. 592

The real ground of the claim made by the assignees in behalf of the joint estate is, that the property of the partnership has been appropriated to pay the private debts of one of the firm, and that thereby an equitable claim exists in favor of the joint estate, to be reimbursed for such payment out of the separate estate of the copartner whose debt has thus been paid. But this appropriation of the partnership estate was not made by the assignees, nor was it the result of the operation of any provision of the insolvent laws. It was the legitimate consequence of carrying out a valid act of the insolvents, which they had done prior to their insolvency, when they had entire control over the partnership property, with power to convert it into separate property, or appropriate it to the payment of their several and separate debts. The creditors of the firm, during the continuance of the partnership and before its insolvency, had no equity against the property of the firm. They could not interfere in any way with its disposition, nor enforce any claim against it except by a common action at law. All that they can do, in case of insolvency, is to avail themselves of any equity which may exist in favor of one partner against another in relation to the disposition of the joint estate. But no such equity exists in this case between the copartners as to the property included in these mortgages. They had both parted with all their interest to it so far as it was necessary to secure the debts for which it was pledged. To that extent, neither of the partners has any control over the property, nor as between themselves any equitable claim or lien upon it. It is clear therefore that this case falls within the reason and principle of that class of decisions in which it has been held that property, transferred by copartners *bona fide* before insolvency, cannot be reclaimed for the benefit of the joint estate. *Howe* v. *Lawrence* 9 Cush. 553, and cases cited. *Decree accordingly.*